# EXHIBIT A

*Dilts, et al. v. Penske Logistics, L.L.C., et al.*
U.S.D.C. Case No. 08CV0318 CAB (BLM)

**DECLARATION OF MICHAEL D. SINGER IN SUPPORT OF PLAINTIFFS' <u>UNCONTESTED</u> MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# SETTLEMENT AGREEMENT

Subject to final approval by the Court, this Settlement Agreement ("Agreement") is between MICKEY DILTS, RAY RIOS, and DONNIE DUSHAJ ("Plaintiffs") and PENSKE LOGISTICS, LLC and PENSKE TRUCK LEASING CO., L.P. (collectively "Penske"). Plaintiffs and Penske collectively are referred to in this Agreement as the "Parties."

**I.   DEFINITIONS**

In addition to the other terms defined in this Agreement, the terms below have the following meaning:

**A.**   "Action" means the lawsuit titled *Mickey Lee Dilts*, *Ray Rios, and Donnie Dushaj, on behalf of themselves and all others similarly situated* v. *Penske Logistics, LLC and Penske Truck Leasing Co., L.P.,* U.S.D.C., Southern District, Case No. 08 CV 0318 CAB (BLM).

**B.**   "Administrative Costs" means all costs incurred by a Settlement Administrator to administer the claims process in the Actions.

**C.**   "Agreement" means this Settlement Agreement.

**D.**   "Class Representatives" shall refer to named Plaintiffs Mickey Dilts and Ray Rios.

**E.**   "Class" means all persons employed by Penske in California at the Ontario-Perris facilities as driver/installers or helpers/installers assigned to the Whirlpool Account at any time during the period from February 1, 2006 through May 31, 2009 as set forth in the Class List attached as Exhibit 1.

**F.**   "Class Counsel" means Michael D. Singer and J. Jason Hill, Cohelan, Khoury & Singer ("CKS"), 605 "C" Street, Suite 200, San Diego, CA 92101.

**G.**   "Class Claims" means the claims described in the Class Action Complaint ("Complaint") and in the Modified Pre-Trial Order for the Class Period for: (1) illegal wage deductions for tool expenses pursuant to Cal. Labor Code §§ 221-224; (2) failure to reimburse for necessary tool expenditures pursuant to Cal. Labor Code § 2802; (3) failure to pay all wages due at termination pursuant to Cal. Labor Code § 203 with respect to wages owed for tool expenses; (4) inaccurate wage statements in violation of Cal. Labor Code § 226; (5) violation of the California Unfair Competition Law, Cal. Business & Professions Code §17200, *et. seq.*, with respect to claims for illegal wage deductions for tool expenses pursuant to Cal. Labor Code §§ 221-224 and failure to reimburse for necessary tool expenditures pursuant to Cal. Labor Code § 2802; and (6) penalties and interest related to the claims for tool expense deductions and tool expenditure reimbursements.

**H.**   "Class List" means the list of persons identified by name as Class Members in Exhibit 1 to this Agreement.

**I.**   "Class Member(s)" (or "Member(s) of the Class") means all members of the Class

who have not properly excluded themselves from the settlement as instructed by the Class Notice.

J. "Class Notice" or "Notice" means the Notice of Class Action Settlement, substantially similar to the form attached hereto as Exhibit 2.

K. "Class Notice Packet" or "Notice Packet" means the Class Notice and Notice of Change of Address Form (attached as Exhibit "3"), all to be substantially similar to the forms attached as Exhibits "2" and "3", subject to Court approval, and incorporated by reference into this Agreement.

L. "Class Period" means the period of time from February 1, 2006 through May 31, 2009.

"Class Released Claims" means any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (excluding attorneys' fees and costs actually incurred) arising out of or related to the following claims: (1) illegal wage deductions for tool expenses pursuant to Cal. Labor Code §§ 221-224; (2) failure to reimburse for necessary tool expenditures pursuant to Cal. Labor Code § 2802; (3) failure to pay all wages due at termination related to tool expenses pursuant to Cal. Labor Code § 203; (4) inaccurate wage statements in violation of Cal. Labor Code § 226; (5) violation of the California Unfair Competition Law, Cal. Business & Professions Code §17200, *et. seq.*, with respect to claims for illegal wage deductions for tool expenses pursuant to Cal. Labor Code §§ 221-224 and failure to reimburse for necessary tool expenditures pursuant to Cal. Labor Code § 2802; and (6) any derivative claims related thereto. Claims for violation of Cal. Labor Code § 226.7, as well as related derivative claims under Cal. Labor Code §§ 203, 226, and Cal. Business & Professions Code § 17200 are not included in Class Released Claims.

M. "Decertification Order" means the Court's Order on Penske's Motion for Judgment under F.R.C.P. Rule 52(c), Doc. No. 267.

N. "Defendant" means Penske Logistics, LLC And Penske Truck Leasing Co., L.P.

O. "Effective Final Settlement Date" means the earliest of the following events:

   1. the expiration of the time for filing an appeal if there are any objections filed by any Class Member;

   2. the conclusion of any appeal taken if there is any appeal filed by any Class Member;

   3. the withdrawal of the last objection to the Settlement; or

   4. the entry of the final approval order if there are no objections filed by any Class Member.

P. "Exclusion Request" or "Request for Exclusion" means the written exclusion that each Class Member is required to timely submit to be validly excluded from the Settlement.

Q. "Final Approval" means that the Final Approval Order and the order terminating

      the case have been entered.

| | |
|---|---|
| R. | "Final Approval Hearing" means the hearing by the Court to determine whether to give final approval to and implement the terms of this Agreement. |
| S. | "Gross Settlement Amount" or "GSA" means $100,000.00, which is the maximum sum Defendant is required to pay under this Agreement, for the Individual Plaintiffs' Settlement Share payments, Participating Class Member Settlement Payments, and Settlement Administrator expenses. |
| T. | "Individual Plaintiffs" means Mickey Lee Dilts, Ray Rios, and Donnie Dushaj. |
| U. | "Individual Plaintiffs' Released Claims" means any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (excluding attorneys' fees and costs actually incurred) arising out of or related to Individual Plaintiffs' claims and facts asserted in the Complaint, the Action, and the Modified Pre-Trial Order or arising out of or related to those claims adjudicated in the Liability Findings, including the following claims alleged in the Complaint: (1) failure to pay hourly and overtime wages pursuant to Cal. Labor Code §§ 1194, 1197 and applicable IWC wage orders, (2) failure to pay piece rate overtime pursuant to Cal. Labor Code §§ 1194, 1197, 1199 and applicable IWC wage orders, (3) inaccurate wage statements pursuant to Cal. Labor Code § 226, (4) failure to pay all wages due at termination of employment pursuant to Cal. Labor Code § 203, (5) illegal wage deductions pursuant to Cal. Labor Code §§ 221-224, (6) failure to reimburse for necessary tool expenditures pursuant to Cal. Labor Code § 2802, (7) violation of the California Unfair Competition Law, Cal. Business & Professions Code § 17200, *et. seq.*, and (8) any and all derivative claims, penalties, and interest arising out of these claims, but specifically excluding claims for violation of Cal. Labor Code § 226.7 with respect to meal and/or rest breaks as alleged in the Third and Fourth Causes of Action of the Complaint, which claims are currently on appeal to the Ninth Circuit Court of Appeals. |
| V. | "Liability Findings" means the Court's Findings of Fact and Conclusions of Law—Liability Phase, Doc. No. 273, filed February 19, 2014. |
| W. | "Modified Pre-Trial Order" means the operative Pre-Trial Order issued by the Court, Doc. No. 246. |
| X. | "Net Settlement Amount" or "NSA" means the Gross Settlement Amount, minus (i) the Individual Plaintiffs' Settlement Share payments, and (ii) the court-approved Settlement Administrator's fees and expenses. |
| Y. | "Non-Participating Class Member" means any Class Member who timely submits a valid Exclusion Request. |
| Z. | "Participating Class Member" means any Class Member who does not timely submit a valid and timely Request for Exclusion, and one who will receive a Settlement Payment without the need to return a claim form. |
| AA. | "Parties" means the Individual Plaintiffs, the Class Members, and Penske. |
| BB. | "Penske Counsel" means James H. Hanson, Scopelitis, Garvin, Light, Hanson & Feary, P.C., 10 West Market Street, Suite 1500, Indianapolis, IN 46204; Adam C. |

3

        Smedstad, Scopelitis, Garvin, Light, Hanson & Feary, P.C., 30 W. Monroe Street, Suite 600, Chicago, IL 60603; and Christopher C. McNatt, Jr., Scopelitis, Garvin, Light, Hanson & Feary, LLP, 2 North Lake Avenue, Suite 460, Pasadena, CA 91101.

**CC.** "Preliminary Approval of the Settlement" means the Court's preliminary approval of the Settlement.

**DD.** "Released Claims" means the Class Released Claims and the Individual Plaintiffs' Released Claims as defined in this Settlement Agreement.

**EE.** "Releasees" or "Released Parties" means Penske Logistics, LLC, Penske Truck Leasing Co., L.P., and any of their former and present parents, subsidiaries, and affiliated companies, as well as their officers, directors, employees, partners, shareholders and agents, attorneys, and any other successors, assigns, or legal representatives.

**FF.** "Settlement" or "Settlement Agreement" means the disposition of the Action and all related claims effectuated by this Agreement.

**GG.** "Settlement Administrator" means Dahl Administration., or such other entity which the Parties mutually agree shall serve as Settlement Administrator, as approved by the Court.

**HH.** "Settlement Share Payment" means the amount payable to a Participating Class Member under the terms of this Settlement Agreement.

## II. RECITALS

**A.** On January 17, 2008, Individual Plaintiffs filed the putative class action Complaint against Penske in the San Diego County Superior Court for various wage and hour violations, including: (1) Failure to Pay Hourly and Overtime Wages (Cal. Labor Code § 1194; IWC Wage Order 9-2001); (2) Failure to Pay Piece Rate Overtime (Cal. Labor Code §§ 1194, 1199); (3) Failure to Provide Meal Periods or Compensation in Lieu Thereof (Cal. Labor Code, §§ 226.7, 512; IWC Wage Order 9-2001(11); Cal. Code Regs., Title 8, § 11090(11); (4) Failure to Provide Rest Periods or Compensation in Lieu Thereof (Cal. Labor Code § 226.7; IWC Wage Order 9-2001(12); Cal. Code Regs., Title 8, § 11090(12));  (5) Knowing and Intentional Failure to Comply With Itemized Employee Wage Statement Provisions (Cal. Labor Code, § 226(b)); and (6) Violations of the Unfair Competition Law (Cal. Business & Professions Code §§ 17200-17208).

**B.** On January 25, 2008, Defendant removed the Action to the U.S.D.C., Southern District, where the Action is now pending.

**C.** Following pre-certification discovery, the Court on April 26, 2010 certified a class of 344 driver/installers and helper/installers for claims alleging illegal wage deductions, failure to pay regular and overtime wages, failure to reimburse for necessary business expenditures, failure to provide meal periods or compensation in lieu thereof, failure to provide rest periods or compensation in lieu thereof, failure to provide accurate itemized wage statements, failure to pay all wages owed at separation from employment, and violations of the unfair competition law, Doc. Nos. 74 & 75.

    **D.**    On October 19, 2011, the Court granted summary judgment in favor of Penske on Plaintiffs' Third and Fourth Causes of Action for violation of California meal and rest period laws, including the derivative claims related thereto, finding these laws preempted by the Federal Aviation Administration Authorization Act, Doc. No. 112.

    **E.**    On March 23, 2012, the Court entered judgment on Plaintiffs' Third and Fourth Causes of Action, including the derivative claims related thereto, Doc. No. 124. Plaintiffs have appealed the judgment to the Ninth Circuit Court of Appeals, and these claims are excluded from this Settlement.

    **F.**    Following pre-trial motions, trial and expert discovery, and motions in limine, the matter proceeded to a six-day bench trial on January 13, 14, 15, 16, 21, and 22, 2014. On January 21, 2014 the Court issued the Decertification Order. On February 19, 2014, the Court issued the Liability Findings, ordered the parties to submit a joint damages trial methodology statement on April 4, 2014, and scheduled a telephonic status conference for April 18, 2014, which was continued to April 25, 2014.

    **G.**    Settlement negotiations resulted in the Parties reaching an agreement to settle the Class and Individual Plaintiffs' claims on April 25, 2014, prior to the telephonic status conference.

    **H.**    Based on the above Recitals, the Parties agree as follows:

## III. SETTLEMENT TERMS AND CONDITIONS

    **A.**    **Gross Settlement Amount**. Subject to the terms and conditions of this Agreement, the maximum Gross Settlement Amount that Penske is obligated to pay under this Settlement Agreement is $100,000.00.

    **B.**    **Attorney's Fees, Costs, and Incentive Payments to Class Representatives.** No part of the Settlement shall be payable to Attorney's Fees, Costs, or Incentive Payments to the Class Representatives. Concurrent with Final Approval, Plaintiffs' and Class Counsel shall move the Court for an order awarding reasonable attorneys' fees, litigation costs, and Class Representative incentive payments, which Penske intends to oppose. Nothing in this Agreement shall limit Plaintiffs' and Class Counsel's ability to move the Court for an award of attorneys' fees, litigation costs, and Class Representative incentive payments in connection with either the Individual Plaintiffs' Settlement or the Class Settlement.

    **C.**    **Individual Plaintiffs' Settlement Share Payments**: Based on the Liability Findings, as calculated by Plaintiffs and disputed by Penske, the Settlement Administrator shall pay Individual Plaintiffs' Settlement Share Payments (the aggregate of which totals $27,191), from the Gross Settlement Amount in the following amounts:

- Mickey Lee Dilts:         $13,418.00
- Ray Rios:                  $13,362.00
- Donnie Dushaj:          $    411.00

5

D. **Participating Class Member Settlement Share Payment Calculation.** Each Participating Class Member shall receive a pro-rata share of the Net Settlement Amount, i.e., the Net Settlement Amount divided by the number of Participating Class Members.

E. **Individual Plaintiffs Do Not Participate in the Net Settlement Amount Proceeds.** The Individual Plaintiffs shall not be counted as Participating Class Members, and thus will not be entitled to receive a pro-rata share of the Net Settlement Amount. Individual Plaintiffs will receive their Individual Settlement share payments as noted above.

F. **Allocation to Wages, Penalties, and Interest for all Payments to Individual Plaintiffs and to the Participating Class Members**. The payments to the Individual Plaintiffs shall be allocated 20% wages, 20% interest, and 60% penalties. The payments to the Participating Class Members shall be allocated as non-wage expense reimbursements. The Settlement Administrator shall prepare the applicable tax reporting forms and shall make any required withholdings, including any applicable employer's contribution of taxes for the Individual Plaintiffs' Settlement Shares, which shall be made from the Gross Settlement Amount.

G. **Effect of Non-Participating Class Members.** Non-Participating Class Members will receive no Settlement Share Payment, and their Settlement Shares will remain with the Net Settlement Amount for pro-rata distribution to Participating Class Members.

H. **Distribution of the Gross Settlement Amount.** Subject to the terms and conditions of this Agreement, the following will be paid from the Gross Settlement Amount and Net Settlement Amount as follows:

   1. **The Individual Plaintiffs' Settlement Share Payments**, as set forth in Paragraph III(C), above, from the Gross Settlement Amount.

   2. **The Settlement Administrator's payment for administration of the Settlement.** The Settlement Administrator will pay to itself reasonable fees and expenses approved by the Court. The fees and expenses are estimated to be $4,135.00, and will be paid out of the Gross Settlement Amount.

   3. **The Participating Class Members' Settlement Payments.** The Participating Class Members will receive their pro-rata share of the Settlement according to the formula set forth above in Paragraph III(D). All payments to Participating Class Members shall be made from the Net Settlement Amount.

   4. **Any employer required tax contributions related to the Individual Plaintiffs' Settlement Share Payments** from the Gross Settlement Amount.

I. **Appointment of Settlement Administrator.** The Parties will ask the Court to appoint Dahl Administration as the Settlement Administrator, which, as a condition of appointment, will agree to be bound by this Agreement with respect to the performance of its duties and its compensation. The Settlement Administrator's duties will include preparing, printing, and mailing the Class

6

Notice Packets to all Class Members; conducting a National Change of Address database search on any Class Notice Packet returned by the U.S. Postal Service as non-deliverable, skip traces, and re-mailing the Class Notice Packet to the Class Member's new address; setting up a toll-free telephone number to receive calls from Class Members receiving completed requests for exclusion and Change of Address forms; providing the Parties with weekly status reports about the delivery of Class Notice Packets; calculating individual Settlement Shares for Participatng Class Members; effectuating the payments due under this Settlement; and otherwise administering the Settlement pursuant to this Agreement. The Settlement Administrator's reasonable fees and expenses will be paid out of the Gross Settlement Amount, as set forth in this Agreement.

J. **Procedure for Approving Settlement**.

1. **Motion for Preliminary Approval**.

   a. Plaintiffs will request an order giving Preliminary Approval of the Settlement, setting a date for the Final Approval Hearing, and approving the Class Notice Packet (the "Motion for Preliminary Approval") and will also request, separate from the Motion for Preliminary Approval, an order setting a briefing schedule and hearing date on Plaintiffs' Motion for Attorney's Fees and Costs, which will be contested by Penske.

   b. At the hearing on the Motion for Preliminary Approval, the Parties will jointly appear, support the granting of the motion, and submit a proposed order granting preliminary approval of the Settlement; appointing the Settlement Administrator; approving the forms the Class Notice Packet; setting the Final Approval Hearing; and setting a briefing schedule and hearing date for Plaintiffs' contested Motion for Attorney's Fees and Costs.

   c. Should the Court decline to preliminarily approve all material aspects of the Settlement, the Settlement will be null and void, and the Parties will have no further obligations under it.

2. **Notice to Class Members.** After the Court enters its order granting Preliminary Approval of the Settlement, every Class Member will be provided with the Class Notice Packets in accordance with the following procedure:

   a. Within seven (7) days after entry of an order granting Preliminary Approval of the Settlement, Penske shall deliver to the Settlement Administrator the Class List in a ready to use Microsoft Office Excel spreadsheet, which shall include the following information for each Class Member: his name; last known mailing address; telephone number; and social security number. If any or all of this information is unavailable to Penske, Penske will so inform Class Counsel and the Parties will make their best efforts to reconstruct or otherwise agree upon how to deal with the unavailable information.

   b. Within fourteen (14) days after entry of an order granting Preliminary Approval of the Settlement, the Settlement

      Administrator will mail the Class Notice Packets to all identified Class Members via first-class regular U.S. Mail using the mailing address information provided by Penske, unless modified by any updated address information that the Settlement Administrator obtains in the course of administration of the Settlement. Before mailing the Class Notice Packets, the Settlement Administrator will conduct a National Change of Address Data Base search to update mailing addresses.

  **c.** If a Class Notice Packet is returned because of an incorrect address, within seven (7) calendar days from receipt of the returned packet, the Settlement Administrator will perform a skip trace for a more current address for the Class Member and re-mail the Class Notice Packet to the Class Member. The Settlement Administrator will be responsible for taking reasonable steps to trace the mailing address of any Class Member for whom a Class Notice Packet is returned by the U.S. Postal Service as undeliverable. These reasonable steps shall include, at a minimum, the tracking of all undelivered mail; performing address searches for all mail returned without a forwarding address; and promptly re-mailing the Class Notice Packet to Class Members for whom new addresses are found. If the Class Notice Packet is re-mailed, the Settlement Administrator will note for its own records the date and address of each such re-mailing.

  **d.** The Settlement Administrator shall provide a weekly status report to the Parties. As part of its weekly status report, the Settlement Administrator will inform Class Counsel and Penske Counsel of the number of Notice Packets mailed, the number of Notice Packets returned as undeliverable, the number of Notice Packets re-mailed, the number of requests for exclusion received, and objections submitted, if any.

  **e.** No later than twenty-one (21) calendar days before the Final Approval Hearing, the Settlement Administrator will serve on the Parties a declaration of due diligence setting forth its compliance with its obligations under this Agreement. The declaration from the Settlement Administrator shall be filed with the Court by Class Counsel no later than ten (10) Court days before the Final Approval Hearing. Before the Final Approval Hearing, the Settlement Administrator will supplement its declaration of due diligence if any material changes occur from the date of the filing of its prior declaration.

**3.** **No Claim Form is required to Participate**. Unless a Class Member submits a request to be excluded from the Settlement, which is signed, dated, and timely postmarked, he is deemed to be a Participating Class Member entitled to receive a pro rata Settlement Share. No action is required from Class Members to participate in the Settlement other than to keep the Settlement Administrator apprised of any change in mailing address to ensure receipt of his Settlement Payment.

8

4. **Objections to Settlement.** The Class Notice will provide that Class Members who wish to object to the Settlement must do so in writing, and mailed to the Settlement Administrator postmarked no later than sixty (60) calendar days after the Settlement Administrator first mails the Class Notice Packet. The timeframe to submit an objection will not be increased for returned mailings.

    a. **Format.** Any objection shall state: (a) the objecting person's full name, address, and telephone number; (b) the case name and number; (c) the words "Notice of Objection" or "Formal Objection"; (c) in clear and concise terms, the legal and factual arguments supporting the objection; and (d) a list identifying witness(es) the objector may call to testify at the fairness hearing. The objection must also provide true and correct copies of any exhibit(s) the objector intends to offer at the final fairness hearing. The objection will not be valid if it objects only to the appropriateness of the Action or its merits.

    b. **Notice of Intention to Appear**. Class Members who timely file valid objections to the Settlement may appear at the Final Approval Hearing either in person or through the objector's own counsel, provided the objector has first notified the Settlement Administrator by sending his written objections to the Settlement Administrator, postmarked no later than sixty (60) calendar days after the Settlement Administrator first mails the Notice Packets to the Class.

5. **Request for Exclusion from Settlement, "Exclusion Request".** The Class Notice will provide that Class Members who wish to exclude themselves from the Settlement must do so in writing, as directed by the Class Notice and mailed to the Settlement Administrator postmarked no later than sixty (60) calendar days after the Settlement Administrator first mails the Class Notice Packet. The timeframe to submit an Exclusion Request will not be increased for returned mailings. The delivery date to the Settlement Administrator is deemed to be the date the Exclusion Request is deposited in the U.S. Mail as evidenced by the postmark.

    a. **Format.** Any written Request for Exclusion must contain: the requesting person's full name, address, and telephone number, and last four digits of his or her social security number.

    b. **Class Members Who Opt Out of Class**. Class Members who submit valid and timely Exclusion Requests pursuant to the Class Notice are not Participating Class Members, are not entitled to any Settlement Payment, and will not be bound by this Settlement or any order or judgment entered by the Court approving this Settlement. The statute of limitations on any claims that they may have, which are otherwise covered by this Settlement, will begin to run from the date on the postmark of their Exclusion Request.

    c. **Participating Class Members**. All Participating Class Members shall receive a Settlement Payment and will be bound

9

by the terms of the Settlement.

6. **Report.**  No later than fourteen (14) calendar days after the deadline for submission of Exclusion Requests, Objections and Notices of Intention to Appear, the Settlement Administrator will provide the Parties with a complete and accurate accounting of the number of Notice Packets mailed to Class Members, the number of Notice Packets returned as undeliverable, the number of Notice Packets re-mailed to Class Members, the number of re-mailed Notice Packets returned as undeliverable, the number of Class Members who returned valid Objections and Notices of Intentions to Appear, and Exclusion Requests and the number of Class Members who returned invalid Objections, Notices of Intentions to Appear, and Exclusion Requests.

7. **No Solicitation of Objection or Exclusion Request.**  Neither the Parties nor their respective counsel will solicit or otherwise encourage directly or indirectly any Class Member to object to the Settlement, request exclusion from the Settlement or appeal from the final order terminating the Action pursuant to the Settlement (the "Final Order").

8. **Additional Briefing and Final Approval**.

    a. Class Counsel will file an unopposed motion and memorandum in support thereof for final approval of the Settlement and the Settlement Administrator's costs.

    b. If the Court does not grant final approval of the Settlement or if the Court's final approval of the Settlement is reversed or materially modified on appellate review, then this Settlement will become null and void; if that occurs, the Parties will have no further obligations under the Settlement, including any obligation by Penske to pay the Gross Settlement Amount.  Should this occur, the Parties agree they shall be equally responsible for the Settlement Administrator's fees and expenses through that date.

    c. Upon final approval of the Settlement by the Court, the Parties shall present to the Court a proposed Order Approving Class Settlement and entering the Final Order.  After entry of the Final Order, the Court shall have continuing jurisdiction over the Litigation for purposes of (i) enforcing this Settlement Agreement, (ii) addressing settlement administration matters, and (iii) addressing such post-Final Order matters as may be appropriate under Court rules or applicable law.

    d. Concurrent with the Motion for Final Approval, Plaintiffs will also move the Court for an award of attorney's fees and costs, which will be contested by Penske. Nothing in this Agreement shall be interpreted to constitute any waiver of Plaintiffs' rights to move the Court for an award of reasonable attorney's fees and costs incurred in connection with the Action nor Penske's right to contest such an award or to appeal from any such award.  Plaintiffs' motion will be heard by United States District Court Judge Cathy Ann Bencivengo, or as required by applicable Federal Rules of Civil

10

>       Procedure and Southern District Local Rules.  The Parties will make efforts to jointly request that Judge Bencivengo concurrently hear and determine final Approval and Plaintiffs' motion for attorney's fees and costs.

9. **Waiver of Right to Appeal.**  Provided that the Final Order is consistent with the terms and conditions of this Agreement, if Participating Class Members do not timely object to the Settlement, then the Parties, and their respective counsel waive any and all rights to appeal from the Final Order, including, but not limited to, all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate or set aside judgment, and any extraordinary writ, and the Final Order will become non-appealable at the time it is entered.  The waiver of appeal does not apply to any appeal by Penske from any award of attorney's fees or costs to Individual Plaintiffs' Counsel or to Class Counsel and does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-Final Order proceedings.  If an appeal is taken from the Final Order, the time for consummation of the Settlement (including making payments under the Settlement) will be suspended until such time as the appeal is finally resolved and the Final Order becomes a final non-appealable order.  Notwithstanding the foregoing, nothing in this Agreement shall affect the currently pending appeal in the Ninth Circuit Court of Appeals in the *Dilts v. Penske* matter, Case No. 12-55705.

10. **Vacating, Reversing, or Modifying the Final Order on Appeal.**  If, after a notice of appeal, the reviewing court vacates, reverses, or modifies the Final Order such that there is a material modification to the Settlement, and that court's decision is not completely reversed and the Final Order is not fully affirmed on review by a higher court, then this Settlement will become null and void, and the Parties will have no further obligations under it.  A material modification would include, but not necessarily limited to, any alteration of the Gross Settlement Amount, an alteration in the calculation of the Net Settlement Amount, and any change to the calculation of the Settlement Share.

11. **Funding the Gross Settlement Amount.**  Thirty-three (33) days following entry of a final, non-appealable order approving the Settlement, Penske shall transmit to the Settlement Administrator, the Gross Settlement Amount.

12. **Disbursement of Settlement Shares and Participating Class Member Settlement Payments**.  Within three (3) days after Penske transmits the Gross Settlement Amount, the Settlement Administrator will prepare and mail the checks to the Individual Plaintiffs and to each of the Participating Class Members.  The Settlement Administrator shall also prepare any and all attendant tax forms and make all necessary tax filings.

13. **Uncashed Settlement Share Checks.**  Participating Class Members must cash or deposit their Settlement Share checks within 150 calendar days after the checks are mailed to them.  If any checks are not redeemed or deposited within 90 days after mailing, the Settlement Administrator will send a letter indicating that unless the check is redeemed or deposited in the next sixty (60) days, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced.  Thereafter, the

      amount represented by any uncashed checks shall be paid by the Settlement Adminstrator to the California State Controller – Unclaimed Property Division, with the identity of the Participating Class Members to whom the funds belong.  In such event, the Participating Class Member will nevertheless remain bound by the Settlement.

  **14.**    **Final Report by Settlement Administrator.**  Within fourteen (14) days after the mailing of the Individual Plaintiffs' Settlement share checks and Participating Class Member Settlement share checks, and receipt of the Settlement Administrator's check, the Settlement Administrator will serve on the Parties a declaration providing a final report on the mailing of all of all checks which comprise the Gross Settlement Amount.

**K.**    **Release of Claims**.

  **1.**    **Release by Participating Class Members.**  Upon final approval by the Court, all Participating Class Members will release the Released Parties from the Class Released Claims.

  **2.**    **Release by Individual Plaintiffs**.  Upon final approval by the Court, the Individual Plaintiffs, Mickey Lee Dilts, Ray Rios, and Donnie Dushaj, will release the Released Parties from the Individual Plaintiffs' Released Claims.

**L.**    **Miscellaneous Terms**.

  **1.**    **No Admission of Liability**.

    **a.**    Penske denies that it has engaged in any unlawful activity, has failed to comply with the law in any respect, or has any liability to anyone under the claims asserted in the Action. This Agreement is entered into solely for the purpose of compromising highly disputed claims.  Nothing in this Agreement is intended or will be construed as an admission by Penske of liability or wrongdoing, or an admission by Plaintiffs that any of their claims were non-meritorious or any defenses to their claims were meritorious.  This Settlement and the fact that Plaintiffs and Penske were willing to settle the Action will have no bearing on, and will not be admissible in connection with, any litigation (other than solely in connection with the Settlement).

    **b.**    Whether or not the Settlement set forth in this Agreement becomes final, neither the Settlement, this Agreement, any document, statement, proceeding or conduct related to the Settlement or the Agreement, nor any reports or accounting of those matters, will be (i) construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Plaintiffs, the Class, Penske, or the "Released Parties", including, but not limited to, evidence of a presumption, concession, indication or admission by any of the Released Parties of any liability, fault, wrongdoing, omission, concession or damage; or (ii) disclosed, referred to or offered in evidence against any of the Released Parties, in any further proceeding in the Action, or any other civil, criminal or administrative action or

      proceeding except for purposes of effectuating the Settlement pursuant to this Agreement.

    **c.** This Section and all other provisions of this Agreement notwithstanding, any and all provisions of this Agreement may be admitted in evidence and otherwise used in any and all proceedings to enforce any or all terms of this Agreement or in defense of any claims released or barred by this Agreement.

2. **Integrated Agreement.** After this Agreement is signed and delivered by all Parties and their counsel, this Agreement and its exhibits will constitute the entire agreement between the Parties relating to the Settlement, and it will then be deemed that no oral representations, warranties, covenants, or inducements have been made to any party concerning this Agreement or its exhibits other than the representations, warranties, covenants, and inducements expressly stated in this Agreement and its exhibits.

3. **Attorney Authorization.** Class Counsel and Penske's Counsel warrant and represent that they are authorized by Plaintiffs and Penske, respectively, to take all appropriate action required or permitted to be taken by such Parties under this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.

4. **Modification of Agreement.** This Agreement, and any and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their successors-in-interest.

5. **Agreement Binding on Successors.** This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

6. **No Prior Assignment**. Plaintiffs hereby represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged

7. **Applicable Law.** All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of California, without giving effect to any conflict of law principles or choice of law principles.

8. **Cooperation in Drafting.** The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

9. **Fair Settlement.** The Parties and their respective counsel believe and warrant that this Agreement reflects a fair, reasonable, and adequate settlement of the Action and have arrived at this Agreement through arms-length negotiations, taking into account all relevant factors, current and potential.

13

**10.** **Headings.** The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

**11.** **Execution in Counterpart.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts. Facsimile or PDF signatures will be accepted. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

**EXECUTION BY PARTIES AND COUNSEL**

The Parties and their counsel execute this Agreement.

Dated: _____, 2014        MICKEY LEE DILTS

                                      _____


Dated: _____, 2014        RAY RIOS

                                      _____


Dated: _____, 2014        DONNIE DUSHAJ

                                      _____


Dated: _____, 2014        PENSKE LOGISTICS, LLC and PENSKE TRUCK LEASING CO., L.P.


                                      By: _____
                                          Name:
                                          Title:

10. **Headings.** The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

11. **Execution in Counterpart.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument provided that counsel for the Parties will exchange between themselves original signed counterparts. Facsimile or PDF signatures will be accepted. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

## EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel execute this Agreement.

Dated: 6-5 , 2014      MICKEY LEE DILTS

                       [signature]

Dated: _____, 2014   RAY RIOS


Dated: _____, 2014   DONNIE DUSHAJ


Dated: _____, 2014   PENSKE LOGISTICS, LLC and PENSKE TRUCK LEASING CO., L.P.

                       By: _____
                           Name:
                           Title:

14

Dated: _____, 2014      SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.


By: _____
    James H. Hanson, Esq.
    Attorneys for Defendants
    PENSKE LOGISTICS, LLC and PENSKE TRUCK LEASING CO., L.P.


Dated: 6/5, 2014      COHELAN, KHOURY & SINGER

By: _____
    Michael D. Singer, Esq.
    J. Jason Hill, Esq.
    Attorneys for Plaintiffs on behalf of themselves and all others similarly situated

15