UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEY LEE DILTS, RAY RIOS, and DONNY DUSHAJ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PENSKE LOGISTICS, LLC, PENSKE TRUCK LEASING CO., L.P., a Delaware Corporation, and DOES 1 through 25 inclusive,<br><br>Defendants. | Case No.: 08-CV-0318-CAB-(BLM)<br><br>**ORDER ON MOTION TO DECERTIFY CLASS**<br>**[Doc. No. 343]** |

The Court certified five subclasses in this case for alleged meal and rest period violations, based on Plaintiffs' allegations that Penske (1) failed to provide timely first meal breaks to hourly employees who worked a shift of more than five hours, (2) failed to provide any second meal breaks to hourly employees who worked a shift of more than 10 hours, and (3) failed to provide the required rest breaks. Defendants move now to decertify these classes. The motion was fully briefed, the Court held argument and supplemental evidentiary citations were provided by both parties. Having fully

considered the submissions of the parties and the arguments of counsel, the motion to decertify is **GRANTED in Part** and **DENIED in Part**.

## I. Legal Standards

"Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)). Plaintiffs obtained Rule 23(a) class certification in this matter by asserting they could establish: (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation). Fed. R. Civ. P. 23(a). In addition, Plaintiffs obtained certification under Rule 23(b)(3), by asserting that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In considering class certification, district courts must engage in "a rigorous analysis" as to whether the prerequisites of Rule 23(a) have been satisfied. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). It is often inevitable, therefore, that such an analysis "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* Thus, although the Court cannot "weigh the evidence or otherwise evaluate the merits of a plaintiff's class claim, it can compare the class claims, the type of evidence necessary to support a class-wide finding on those claims, and the bearing of those considerations on Rule 23 certification." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011). Ultimately,

"[d]istrict courts have broad discretion in deciding whether to certify a class." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 622 (S.D. Cal. 2015).Excel

## II. Discussion

Plaintiffs' subclasses at issue are as follows:

- Subclass Two: All Class Members who received meal periods more than five hours after clocking in during the Class Period, as shown by defendants' time records, dispatch logs, or other company records (Late Meal Period Subclass);

- Subclass Three: All Class Members who worked shifts more than 10 hours but less than 12 hours during the Class Period (Second Meal Subclass A);

- Subclass Four: All Class Members who worked shifts more than 12 hours during the Class Periods (Second Meal Subclass B);

- Subclass Five: All Class Members who worked shifts between 5 hours and one minute and 10 hours during the Class Period whose time records show no meal periods taken (General Meal Period Subclass); and

- Subclass Six: All Class Members who worked shifts in excess of three and one-half hours during the Class Period (Rest Period Subclass).

[Doc. No. 72, at 4-5.]

Defendants move to decertify the classes focusing on the commonality and predominance requirements for class certification under Rule 23(a)(2) and Rule 23(b)(3), respectively. The Ninth Circuit recently explained the requirements of Rule 23(a)(2) as follows:

> Although Rule 23(a)(2) refers to common "questions of law or fact" in the plural, even a single common question will do. *Wal–Mart*, 131 S.Ct. at 2556. But because "'[a]ny competently crafted class complaint literally raises common questions,'" *id.* at 2551 (alteration in original) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–32 (2009)), courts should look for a "common contention" in determining whether putative class members' claims can be litigated together. *Id.* "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the

claims in one stroke." *Id*.  Thus, it is not just the common contention, but the answer to that contention, that is important: "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (alterations in original) (quoting Nagareda, *supra*, at 132)."

*Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015).

The predominance requirement under Rule 23(b)(3), requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Thus, "while Rule 23(a)(2) focuses on whether there is 'even a single common question,' Rule 23(b)(3) asks whether common questions predominate over individualized ones." *Amey v. Cinemark USA Inc.*, No. 13-CV-05669-WHO, 2015 WL 2251504, at *6 (N.D. Cal. May 13, 2015) (internal brackets omitted) (citing *Wal–Mart*, 564 U.S. at 359).  "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013).

### I.    First Meal Break Violation (Subclasses Two and Five)

At class certification, the Plaintiffs asserted for the alleged first meal break violation that the common question effecting the class was whether the Defendants had a uniform company policy or practice of impeding or discouraging class members from taking meal breaks no later than the start of the sixth hour of work.  Now after the close of discovery, the evidence demonstrates that whether employees took a timely first meal break is not subject to class-wide resolution and more individualized questions predominate over common questions.

The class members worked in the field, not under direct supervision or control. They left the warehouse each day with their appliances to be delivered and installed and were instructed to take meal and rest breaks when they needed them during their shifts. In this work environment, the class representatives acknowledged that they do not observe the absent class members during their shifts, and have no personal knowledge of

whether, when and why the others took meal breaks. Individual employees determined when to break based on their particular circumstances, and there is employee testimony that they were not told they could not take breaks or when to take their breaks.

Records maintained by Defendants show timely meal breaks, as well as breaks recorded after the start of the sixth hour of work or no recorded meal break at all. The records do not address the reason for a late or missing meal break. There is evidence that even though a daily log might not reflect a meal break, an employee may have taken one and not recorded it. There is testimony that some employees elected to take their breaks later than the commencement of the sixth hour of work because it was their personal preference. There is no evidence that employees were uniformly prohibited from taking timely breaks, or reprimanded or ridiculed for taking a timely break, or for taking it at whatever time the employee chose.

Plaintiffs have not demonstrated that Defendants had uniform policies and practices that denied employees a reasonable opportunity to take an uninterrupted 30-minute duty free meal break at the end of five hours of work, or that Defendants on a class-wide basis impeded or discouraged them from doing so. Although Plaintiffs have proffered evidence from some employees, including the class representatives, that they were at times discouraged or prevented from taking a timely meal break, the Plaintiffs have not shown that there was a uniform policy or practice that applied class-wide throughout the class period. To the contrary, the opportunity and decision to take a timely meal break was dependent on facts unique to each employee and each shift.

In the absence of a uniform policy applicable to all class members, the question of whether informal policies or practices may have discouraged or prevented some class members from taking timely meal breaks is not amenable to class treatment because different class members would have been subject to different practices. Indeed, the lack of a uniform policy or practice actually supports denial of class certification because the question of why an employee did not timely take a meal break is not subject to a common answer for all employees or all missed breaks. *See generally Gonzalez v. Millard Mall*

*Servs., Inc.*, 281 F.R.D. 455, 463-64 (S.D. Cal. 2012) (denying class certification in part because the plaintiff "failed to show that Defendants had a common policy that 'prevented' employees from taking meal breaks and/or failed to 'permit and authorize' employees to take rest breaks under Rule 23(a)(2)"); *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 204 (N.D. Cal. 2009) ("[W]here there is no common policy or practice on the part of the employer, class certification is unavailable.").

Plaintiffs offered that they could establish a class-wide meal break violation by sampling the class members[1] and demonstrating that the majority of them missed or took late meals at the direction of a supervisor. This proposed sampling would also establish that some percentage of the class also took timely meal breaks, or personally decided to delay their meal break. Consequently, the experiences of some class members would not establish a violation as to all class members or address the individual determinations made by employees every day regarding the timing of their meal breaks.

The proposed use of representative evidence in this case is not the equivalent to the circumstances presented in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1040 (2015), in which the common question was whether donning and doffing protective gear was compensable under the FLSA. The common answer was that all the class members were required to wear protective gear and all were not compensated for the time spent to don and doff it. This failure to compensate for the time spent was a violation as to all employees in the class. The representative study used to determine the average amount of time spent to put on and take off the gear, was offered as a substitute for time records that company did not keep, to approximate how much compensation the class members were due. Similarly in *Vaquero v. Ashley Furniture Ind., Inc.*, 2016 WL 3190862, at *3

---

[1] Specifically Plaintiff proposed randomly calling 40 absent class members to testify at trial about their personal experiences and extrapolating from that testimony a percentage of times all class members were denied the opportunity to take a timely meal break. This proposed extrapolation would potentially result in a finding of liability as to all class members for some percentage of their individual shifts, despite evidence to the contrary that those same class members were not in fact denied the opportunity to take timely meals breaks.

(9th Cir. June 8, 2016), the claim was that the defendant violated California minimum wage law by paying all employees in the class only through commissions even for work that was not directly involved in selling. This was the common violation as to all members of the class. The need for an individualized inquiry to determine the damages incurred by each member of the class, regarding the amount of time that employee spent doing work that was not properly compensated, did not defeat class certification.

In the case before the Court, the Plaintiffs have not demonstrated a common policy that prohibited all class members from taking a timely first meal break comparable to *Tyson's* uniform policy not to compensate all class members for time spent putting on necessary protective gear, or the compensation system in *Vaquero* that paid all class members only by commission for work that should have been compensated by hourly wages.

Plaintiffs' evidence that Defendants engaged in practices that prohibited or discouraged class members from exercising their right to take a timely meal break at the commencement of their sixth hour of work, or required them to delay taking a timely meal break or miss it entirely, is not uniform among all class members. Plaintiffs have not produced a policy dictating a meal break schedule that does not comply with the law, or demonstrated that Defendants set daily delivery schedules which necessarily prohibited timely meal breaks. While Plaintiffs note that the delivery schedules did not affirmatively set a meal break at the end of five hours of work for each employee, neither did the schedule set a meal break at some later hour of the shift or preclude one entirely.

The evidence has not demonstrated a common class-wide policy or practice that prohibited all employees from taking timely meal breaks. That some supervisors at some locations on some shifts may not have complied with the law regarding provision of meal breaks does not constitute a uniform policy for all class members. That Defendants did not schedule the employees' meal breaks into their delivery schedules does not establish that Defendants did not provide the opportunity to take a timely meal break. Leaving the decision of when to break to the employee in the field is not the same as prohibiting or

discouraging timely meal breaks. *See Brinker*, 53 Cal. 4th 1004, 1040 (2012) (noting that a "full range of approaches . . . might be sufficient to satisfy the law" concerning the provision of meal breaks).

The Court finds that the evidence regarding whether employees were provided with the opportunity to take a timely first meal break is not subject to class-wide resolution and more individualized questions predominate over common questions. The motion to decertify Subclass Two (Late Meal Period Subclass) and Subclass Five (General Meal Period Subclass) is therefore **GRANTED**.

## II.   Second Meal Break Violation (Subclasses Three and Four)

The common question for the alleged second meal break violation at certification was whether there was a company policy not to provide a second meal break at the end of the tenth hour of work. Although the Court found that there is a dispute as to whether Defendants had a policy to provide this second meal break [Doc. No. 352], the Plaintiffs have presented evidence of a class wide-violation regarding this claim. There is some testimony that a second meal break was provided to employees who worked a shift in excess of ten hours. This however is contradicted by a document attributed to Defendants which states that, at least as of the first quarter of 2006, "locations do not provide for a second lunch for drivers that are working between 10 and 12 hours." [Doc. No. 335-8, at 5.] There is no evidence Defendants obtained waivers for second meal breaks. Further, Plaintiffs contend there was no provision on the driver's log to record a second meal period and the records do not reflect any drivers working in excess of ten hours claiming a second meal break. This evidence corroborates that Defendants had a uniform policy not to provide a second 30-minute duty-free meal break, as required by California law, at least from the start of the class period, January 2004, until the first quarter of 2006. The Defendants' policy and practice for the remaining class period is unclear.

With regard to this alleged violation, there is evidence to support a uniform policy that Defendants did not provide a second meal period as required by law to all the

members of Subclass Three (Second Meal Subclass A) and Subclass Four (Second Meal Subclass B).  The motion to decertify these Subclasses is therefore **DENIED**.

### III.   Rest Break Violations (Subclass Six)

The common question for the alleged rest break violation at certification was given little discussion, but essentially was whether Defendants did not provide for rest breaks or uniformly discouraged or prevented the employees from taking them.  Defendants move to decertify this claim on the basis that there is no evidence of a common policy or practice of denying rest breaks and the various experiences related by individual employees are not sufficient to establish a class-wide violation.

Defendants contend they posted the relevant Wage Order with the correct language regarding rest periods.  Defendants told employees to take breaks when they needed them.  There is employee testimony that out in the field, employees took their rest breaks when needed and they were not prohibited from taking breaks.  There are no time records regarding the taking of rest breaks, but such records need not be kept.

Plaintiffs again contend that it was the practice of the Defendants to discourage rest breaks and therefore employees did not take their rest breaks.  Plaintiffs contend this will be established by the testimony of the various class members, including the class representatives, regarding their personal experiences, but even those experiences are not uniform.  Without a class-wide policy or practice that impeded or denied rest breaks, the experience of any individual class member cannot establish a class-wide practice common to every class member regarding rest breaks.  The Court finds no evidence of a common practice or policy that would support a class-wide determination of liability regarding the rest break claim.

/////

/////

The Court finds that the evidence regarding whether employees were provided timely rest breaks is not subject to class-wide resolution and more individualized questions predominate over common questions. The motion to decertify Subclass Six (Rest Period Subclass) is therefore **GRANTED**.

**IT IS SO ORDERED.**

Dated: July 20, 2016

_____
Hon. Cathy Ann Bencivengo
United States District Judge