UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEY LEE DILTS, RAY RIOS, and DONNY DUSHAJ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PENSKE LOGISTICS, LLC, PENSKE TRUCK LEASING CO., L.P., a Delaware corporation, and DOES 1 through 125, inclusive,<br><br>Defendants. | Case No.: 3:08-CV-00318-CAB-(BLM)<br><br>**FINAL APPROVAL OF CLASS SETTLEMENT AND AWARDS OF ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE PAYMENTS**<br>**[Doc. No. 376]** |

This matter is before the Court on Plaintiffs' unopposed motion for final approval of class action settlement and award of attorneys' fees, costs and class representative enhancement awards. [Doc. No. 376.] The Court held a hearing on this motion on May 22, 2017. As discussed below, the motion for final approval is granted, and the motion for attorneys' fees, costs and class representative enhancement awards is granted in part.

**I.  Background**

Plaintiffs initiated this putative class action lawsuit in the Superior Court of San Diego County on January 17, 2008, alleging various wage and hour violations of

1

3:08-CV-00318-CAB-(BLM)

California's Labor Code and its Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200. Defendants removed the case to this Court on January 25, 2008.

On November 20, 2016, after nearly nine years of litigation, including an appeal to the Ninth Circuit, the parties notified the Court that they had reached a settlement of the remaining certified claims. Plaintiffs filed an unopposed motion for preliminary approval of the class action settlement, which is memorialized in a written settlement agreement dated January 23, 2017. [Doc. Nos. 370, 373.]

The agreement provides for settlement of claims for meal periods under the California Labor Code and Unfair Competition Law (UCL) and derivative claims for wage statement and waiting time penalties. It authorizes: (1) a class settlement in the amount of $750,000; (2) an average class member award of approximately $950 from the Net Settlement amount; (3) a class representative award of $15,000 per person; and (4) $12,500 in class administrator fees. Additionally, $225,000 in attorneys' fees and $135,000 in costs is being requested. The settlement defines the class as "all persons employed by Penske in California facilities as driver/installers or helpers/installers assigned to the Whirlpool Account at any time during the period from January 17, 2004 through December 31, 2009."[1] [Doc. No. 373 at 4.]

On January 23, 2017, Plaintiffs filed an unopposed motion for preliminary approval of their settlement. [Doc. No. 370.] The Court granted the motion and preliminarily approved the settlement on February 6, 2017. [Doc. No. 372.] The preliminary approval

---

[1] Having previously formally certified the class and subsequently decertified certain subclasses, the Court determines that the settlement class continues to satisfy the requirements of Rule 23(a). The settlement class meets the numerosity requirement by containing 353 members, continues to share common issues regarding Defendants' Labor Code violations, and satisfies the typicality requirement because the claims of Plaintiffs and the class are the same. Additionally, the class representatives and class counsel have not changed since the Court originally certified the class. Therefore, solely for the purposes of settlement in accordance with the Settlement Agreement, the Court certifies the defined Class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (before approving the settlement itself, the Court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.")

order set a final approval hearing for May 22, 2017. The final approval hearing took place as scheduled. Counsel for both parties attended. No class members filed objections to the settlement, and no class members attended the hearing. However, one class member requested exclusion from the settlement.

## II. Final Approval of Settlement

### A. Legal Standard for Final Approval of Class Settlement

Federal Rule of Civil Procedure 23(3) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Pro. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). The Rule also "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In making this determination the Court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). Because a "settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon,* 150 F.3d at 1027.

In assessing a settlement proposal the district court is required to balance a number of factors, namely:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026.

//
//
//

### B. Analysis

#### 1. Adequacy of Notice

The Court approved notice of this class action and proposed settlement in the Preliminary Approval Order. The claims administrator distributed the Notice to 354 class members. The Notice advised the Class of the terms of the Settlement, of their rights (1) to participate and to receive their share of the Settlement automatically, without submission of a claim form; (2) to object to the Settlement and to appear at the Final Approval Hearing, (3) to request exclusion from the Settlement; (4) the manner and timing for doing any of these acts; and (5) the date and time set for the final approval hearing. The Notice packet also included the class member's individualized information such as the number of workweeks worked during the Class Period, and the estimated amount of their Settlement Payment. Adequate periods of time were provided for each of these procedures. No class members objected to the settlement or the adequacy of the Notice, and only one class member requested exclusion from the class. Accordingly, the Court finds that the Class received adequate notice.

#### 2. Strength of Plaintiffs' Case; Risk of Further Litigation; and Risk of Maintaining Class Action Status

As a result of the preferable nature of Settlement over the uncertainties, expense and length of litigation "when assessing the strength of plaintiff's case, the court does not reach any ultimate conclusions regarding the contested issues of fact and the law that underlie the merits of this litigation." *Four in One Co. v. S.K. Foods, L.P.,* No. 2:08-CV-3017 KJM EFB, 2014 WL 4078238, at *7 (E.D. Cal. Aug. 14, 2014) (internal quotations omitted). Similarly, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, the Settlement has been reached after nearly nine years of litigation, including an appeal to the Ninth Circuit. Plaintiffs' claims at issue in the settlement involve disputed legal issues. The inherent risk of further litigation in this matter is known to all involved

with the case. Proceeding to trial on the remaining second meal period claim presents a very real risk of an unfavorable decision on the merits and/or on resulting appeals. While Plaintiffs believe in the merits of their case, Defendants have strong defenses to class liability and damages determinations, and there is no guarantee that Plaintiffs will prevail. Furthermore, as evidenced by the somewhat recent decertification of four of the remaining six subclasses after remand, the risk of maintaining class certification on the remaining claim is ongoing. The Court finds these risks weigh in favor of settlement.

### 3. The Amount Offered in Settlement

"Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] * * * is the need to compare the terms of the compromise with the likely rewards of litigation." *In re TD Ameritrade Accountholder Litig.*, 226 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424-25, (1968)). However, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, meant that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, the proposed non-reversionary Settlement of $750,000 is estimated to cover 100 percent of the exposure Plaintiffs' expert calculated Defendants were liable for the period of January 17, 2004 through December 31, 2005[2], plus 38.8 per cent of the potential liability in the event Penske was found to have never provided a second meal period for any qualifying shift during the entire class period. Under the Settlement each of 353 participating Class Members will receive, on average, $941.93. In light of the risks

---

[2] Plaintiffs' estimates were subject to rational discounting to take into account Defendants' claims and defenses regarding the second meal period and their position that Plaintiffs' would not be able to establish a class wide policy at trial. The liability exposure calculation was based on Penske documents Plaintiffs contend constitute evidence that Defendants had not provided second meal period shifts between ten and twelve hours.

associated with continuing this litigation, the Court finds that a payout in this amount appears reasonable and weighs in favor of approval of the settlement.

### 4. Extent of Discovery

"A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution." *Onitverso v. Zamoram*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). The court's assessment focuses on whether the "parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Securities Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney*, 151 F.3d at 1239).

Here, the Settlement has been negotiated after years of pending litigation and substantial discovery has occurred. Counsel has litigated this action through class certification, discovery, dispositive motions, an appeal and remand, decertification of certain claims and pretrial preparation. This long history evidences the parties' significant knowledge regarding the relevant facts, law, and strengths and weaknesses of their claims and defenses. Consequently, the Court finds this factor weighs in favor of approval of the settlement.

### 5. Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Here, Class Counsel has provided a declaration detailing their experience in litigating overtime, expense reimbursement, rest/meal period cases, and other wage and hour class cases. Class Counsel declares that his support of the Settlement is based on a realistic assessment of the strengths and weaknesses of the case, extensive legal and factual research, an assessment of the risks of proceeding with the litigation through the impending trial compared to the certain value of settlement at this time. In light of the foregoing, and according the appropriate weight to the judgment of counsel, the Court finds this factor weighs in favor of the settlement.

### 6. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop., Inc.,* 221 F.R.D. at 529 (citations omitted). Here, only one class member has opted out of the class and no objections to the settlement have been received. *Id.* (the absence of a single objection "is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate.") Accordingly, the Court finds this weighs in favor of settlement.

### 7. Other Factors

The Court also considers two additional factors: the process by which the settlement was reached and the involvement of the named plaintiffs in the process, in looking at the fairness of the Settlement. *See Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (adding factors "(9) the procedure by which the settlements were arrived at, see MANUAL FOR COMPLEX LITITGATION (FOURTH) § 21.6 (2004), and (10) the role taken by the plaintiff in that process.") Here, the parties reached agreement after extensive arms-length negotiations, culminating in a day long mediation before a neutral third party. Class Counsel represent that the class representatives were actively involved in the case, including litigation and settlement. Further, there is no evidence of preferential treatment for certain class members, because final approval is not contingent upon the Court's determination as to class representative incentive awards. Accordingly, the Court finds these factors weigh in favor of settlement.

### 8. Balancing of the Factors

"Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Service Comm'n of City and Cnty. of S.F.,* 688 F.2d 615, 625 (9th Cir. 1982) (citation omitted). "[It must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action

litigation." *Id.* Having considered the relevant factors, the Court finds they all weigh heavily in favor of settlement. As a consequence, the Court finds the settlement fundamentally fair, adequate and reasonable.

### III. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). That Defendants agreed in the settlement not to oppose counsel's request for $225,000 "does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.,* 327 F.3d 938, 964 (9th Cir. 2003).

In a diversity action such as this, federal courts apply state law when determining both the right to fees and the method of calculating them. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Pub. Utilities Comm'n,* 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating fees."). Following the California Supreme Court's decision, in *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016), courts may either use the lodestar approach or "may determine the amount of reasonable fee by choosing an appropriate percentage of the fund created." *Laffitte,* 1 Cal. 5th at 503-06. In discerning an appropriate percentage award in a common fund case, the California Supreme Court suggested considering the risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skills shown by counsel, and a lodestar cross-check. *Id.* at 495, 503-06. Although recognizing the Ninth

Circuit's 25 percent benchmark in common fund cases, it did not adopt this touchstone.[3] *Id.*

Here, Class Counsel submits that awarding $255,000[4], or 30 percent of the common fund, is fair and reasonable in light of the benefit that has been conferred on the Class, the substantial hours and efforts expended "resulting in considerable, negative lodestar multiplier," the litigation risks and complexity of the case, the contingent nature of the fee, the experience of counsel, and the fees commonly awarded in cases of this type. Class Counsel also asserts that the successful appeal of the FAAAA rest and meal period claims in *Dilts v. Penske Logistics, LLC.*, 769 F.3d 637 (9th Cir. 2014) affected dozens of cases and "set the rights of California truck drivers for every shift and trip thereafter." [Doc. No. 376-1 at 16:4-5.] Class Counsel argues that because the requested 30 percent award is less than the lodestar it is therefore reasonable.

As the Court previously acknowledged, the settlement amount of $750,000 confers substantial benefits upon the Settlement Class, particularly in light of the risks associated with continuing this litigation to trial and weighs in favor of the fee amount. *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) (holding that "the most critical factor is the degree of success obtained"). While Class Counsel has litigated this case for over nine years, the Court is mindful that their pursuit of some untenable claims is partially responsible for the protracted length of this lawsuit. Further, the Court notes that when looking at the overall history of the case Class Counsel has in fact achieved very limited success. As a

---

[3] When employing their discretion and utilizing the percentage-of-recovery method, federal "courts typically calculate 25% of the [common settlement] fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942. In assessing the reasonableness of the award in common fund percentage award cases, the Ninth Circuit has provided a non-exhaustive list of factors to be used, including "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g. cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).

[4] This is $37,500 more than the 25% fee benchmark, which would equal approximately $187,500.

consequence, the Court finds consideration of Class Counsel's expended effort and skill to be a neutral factor in deciding the requested fees. That being said, the Court acknowledges that a number of factors support the fees request. For example, this litigation as a whole involved some novel, complicated, and labor intensive claims and issues which weighs in favor of the award. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005). Additionally, Class Counsel assumed the risk of taking this case on a contingency fee basis. *See Spann v. J.C. Penney Corp.,* 211 F. Supp. 3d 1244, 1264 (C.D. Cal. 2016) ("Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award.") (internal quotation marks and citation omitted.) Furthermore, the experience of Class Counsel in litigating class actions of this type supports the request. Moreover, the reaction of the Class to the settlement has been positive, with only one class member requesting exclusion, which supports the fee application.

      The lodestar amount further supports approval of the requested attorneys' fees. Class Counsel declares that they have worked over 775.55 hours on the case, and that the calculated lodestar fee on these hours is $492,190.50. Plaintiffs calculate the lodestar with the following hourly rates for attorneys from the law firm Cohelan Khoury & Singer: $750 for Michael Singer, $550 for J. Jason Hill, $200 for paralegal Amber Worden and $170 for paralegal Matthew Atlas. [Doc. No. 376-2 at 14.] In support, declarations and other evidence are offered to demonstrate the reasonableness of these rates compared to the prevailing market rates in the San Diego community for attorneys of their experience and ability. *See PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (a reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community). Further, Class Counsel attests they have included in their lodestar calculation only fees associated with the summary judgment motion that led to the Ninth Circuit appeal and subsequent remand of the Labor Code section 226.7 claims. Moreover, Class Counsel is requesting an amount that is less than the lodestar calculation, resulting in a multiplier of -2.18.

In light of the foregoing, the Court finds the requested fees are reasonable, and grants Class Counsel's motion for attorneys' fees in the amount of $225,000.

### IV. Costs

Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Plaintiffs provide evidence that they have incurred $166,000 in costs over the course of this litigation. Plaintiffs request the Court award $135,000 even though the actual costs exceed this amount. Defendants do not oppose the costs.

The Court has reviewed the request and finds two particular expense items groundless and exorbitant. Plaintiffs request reimbursement in the amount of $50,000 for an "Appeal Consultant[5]" and over $89,000 for payment of a "Statistician," yet Class Counsel provides no explanation regarding these expenses.[6] The Court is unable to ascertain why these expenses were incurred in relation to the Settled Claims and therefore declines to reimburse the monies spent an Appellant Consultant and reduces the amount to be reimbursed for the Statistician by fifty percent. As a consequence, the Court awards $71,419.63[7] in fees.

### V. Class Representative Payments.

In the Settlement papers, Plaintiffs ask for incentive awards of $15,000, to each of the three named plaintiffs. Although "incentive awards are fairly typical in class action cases," they are discretionary. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Generally, when a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement." *Staton*, 327 F.3d at 976

---

[5] The Appeal Consultant cost $60,000 but Plaintiffs subtracted $10,000 in "Cost Contribution" from the litigation costs, thereby claiming the expenses totaled $166,220.82 rather than $176,220.82

[6] At the final approval hearing, the Court questioned how Plaintiffs could include a request for reimbursement for $60,000 for an Appeal Consultant, but counsel was unable to provide the Court with a satisfactory explanation

[7] $166,220.82 - $50,000 (Appeal consultant) - $44,801.195 (50 percent of statistician expenses) = $71,419.625.

(internal ellipses, quotations, and citation omitted). The purpose of incentive awards, therefore, is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. However, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

In preliminarily approving the Class Settlement, the Court cautioned Plaintiffs that it considered the proposed class representative award of $15,000 to be excessive. Nothing has convinced the undersigned that such an amount is warranted, especially considering the limited success of this litigation as a whole and the average amount each class member will receive. To award a class representative over fifteen times more than what the average class member will receive, or two percent of the $750,000 common fund, is excessive. *See Ko v. Natura Pet Prods., Inc.*, No. C 09-02619, 2017 WL 2289342, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, compromising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the incentive award to $5,000). Accordingly, the Court reduces the discretionary incentive awards to $5,000 per class representative.

## VI. Settlement Administration Cost

Finally, Class Counsel seeks payment of $12,500 to the Claims Administrator. The Court has reviewed the declaration detailing the work performed by CPT Group, Inc., and finds that paying this amount in administrative costs reasonable.

## VII. Conclusion

In light of the foregoing, it is hereby **ORDERED** as follows:

1. The Court **GRANTS** final approval of the proposed settlement;
2. The Court **GRANTS IN PART** Plaintiffs' motion for attorneys' fees, costs and class representative payments [Doc. No. 376];

3. The Court **GRANTS** Class Counsel $225,000 in attorneys' fees and $71,419.63 in costs from the common fund;
4. The Court **GRANTS** class representative enhancement awards of $5,000 each to Plaintiffs Dilts, Rios and Dushaj to be paid from the common fund;
5. The Court **GRANTS** $12,500 in settlement administration costs to be paid from the common fund to CPT Group, Inc.
6. The Class member who asked to opt out of the settlement is excluded from the class.
7. The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.
8. Judgment is hereby entered on the terms set forth above. The Clerk of the Court shall close this case.

It is **SO ORDERED**.

Dated: June 16, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge